FILED 28 FEB '20 15:12 USDC-ORP

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| JASON EDWARD WILSON, ) | **Civil Case No. 3:20-CV-321-HZ** |
| ROXANNE FRANKLIN WILSON, ) | |
| ) | **AMENDED COMPLAINT** |
| **Plaintiff(s),** ) | **FOR VIOLATION OF** |
| ) | **CONSTITUTIONAL RIGHT** |
| **v.** ) | **TO DUE PROCESS AND** |
| ) | **REQUEST FOR INJUNCTION** |
| COUNTY OF LANE, ) | |
| COMMUNITY HEALTH CENTERS OF LANE COUNTY ) | |
| BETHEL 52 SCHOOL DISTRICT (B52), ) | |
| EUGENE 4J SCHOOL DISTRICT (4J), ) | **JURY TRIAL DEMANDED:** |
| ANNA WILLIAMS (CHCLC-LCBH), ) | _ Yes **X** No |
| ELLEN THORNTON LOVE (LCBH-CHCLC), ) | |
| MONIQUE J. CARROLL (CHCLC), ) | |
| MICHELLE DAVILA (CHCLC). ) | |
| ) | |
| **Defendant(s).** ) | |

## AMENDED COMPLAINT AND REQUEST FOR INJUNCTION

### I. PARTIES

**Plaintiffs**      JASON EDWARD WILSON
                    ROXANNE FRANKLIN WILSON
                    511 2ND ST
                    DAYTON, OR 97114
                    (971) 312-1357; (541) 653-0531

**Defendant No. 1** COUNTY OF LANE
                    ℅ LANE COUNTY COUNSEL
                    125 E 8TH AVE
                    EUGENE, OR 97401
                    (541) 682-4442

**Defendant No. 2**  COMMUNITY HEALTH CENTERS OF LANE COUNTY (CHCLC)
LANE COUNTY BEHAVIORAL HEALTH (LCBH-CHCLC)
2073 OLYMPIC ST
SPRINGFIELD, OR 97477
(541) 682-3550

**Defendant No. 3**  BETHEL 52 SCHOOL DISTRICT (B52)
4640 BARGER DR
EUGENE, OR 97402
(541) 689-3280

**Defendant No. 4**  EUGENE 4J SCHOOL DISTRICT (4J)
200 N MONROE ST
EUGENE, OR 97402
(541) 790-7700

**Defendant No. 5**  ANNA MARGARET WILLLIAMS (CHCLC-LCBH)
LANE COUNTY BEHAVIORAL HEALTH
% COMMUNITY HEALTH CENTERS OF LANE COUNTY (CHCLC)
2073 OLYMPIC ST
SPRINGFIELD, OR 97477
(541) 682-3550

**Defendant No. 6**  ELLEN HOPE THORNTON LOVE (CHCLC-LCBH)
LANE COUNTY BEHAVIORAL HEALTH (LCBH)
% COMMUNITY HEALTH CENTERS OF LANE COUNTY (CHCLC)
2073 OLYMPIC ST
SPRINGFIELD, OR 97477
(541) 682-3550

**Defendant No. 7**  MONIQUE JEAN CARROLL (CHCLC)
% MCKENZIE PEDIATRICS
1442 SOUTH A ST
SPRINGFIELD, OR 97477
(541) 726-4100

**Defendant No. 8**  MICHELLE DAVILA (CHCLC)
% EUGENE 4J SCHOOL DISTRICT (4J)
200 N MONROE ST
EUGENE, OR 97402
(541) 62-1427

## II. BASIS FOR JURISDICTION

A. We are bringing suit which contains a federal question against local officials (a § 1331 & 1983 claim). Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Additionally, under 42 U.S.C. § 1983, we may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."

B. Constitutional Right(s) At Issue: 14TH AMENDMENT RIGHT TO DUE PROCESS, *Relating to the Deprivation, Without Due Process Guaranteed by the 14th Amendment of the Fundamental Right of Parents to Protect Their Children's Health, Safety, Education, and Life.*

C. The events giving rise to this claim occurred in Lane County. However, Petitioners request that the case be heard in the jurisdiction of the County of Yamhill, where Petitioners currently reside for the following reasons:
   1. As a reasonable accommodation for the physical disability of Roxanne Franklin Wilson, who is the only licensed driver in her household and whose chronic pain level and loss of mobility is substantially increased by long drives up to and including debilitation.
   2. As protection against the re-occurance of abuse of power and influence as well as the abuse of the vulnerable individuals who are the Petitioners in this case, as has previously taken place in Lane County during Petitioner's attempt to exhaust all administrative remedies to the events giving rise to this claim.

D. The events giving rise to this claim occurred prior to and including the death by suicide of Petitioners' 14-year-old minor child Chloe Elizabeth Wilson, on February 26, 2018.

## III. STATEMENT OF CLAIMS

### Claim I

*Chloe Elizabeth Wilson ("Chloe")*, biological daughter of *Jason Edward Wilson ("Jason")* and stepdaughter of *Roxanne Franklin Wilson ("Roxanne")* self-reported previous suicide attempts to *Dr. Anna Williams (Anna)* while speaking alone (without *Roxanne* present) with *Anna*, and *Anna*'s supervisor *Ellen Thornton-Love ("Ellen")* prior to speaking to *Roxanne* (as indicated in original chart notes). *Anna* is the only person *Chloe* EVER told, with her own mouth, that she had attempted suicide twice before, once only one month before her psychiatrist put her on adult medications which have been evidenced to increase motivation and therefore completion rates of suicide. No safety or action plan was created on this date.

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2Bor%2BCosts.pdf&Itemid=625

It is our suspicion that a document was fabricated on February 27, 2018, the day after *Chloe's* passing, which was the same day many other pages of her requested copy of her file were re-printed and replaced. The only time suicide was ever mentioned in conversations with *Chloe's* parents is when *Anna* told *Roxanne* that the medication she was prescribing could *cause* suicidal ideations, so to make sure to keep her meds locked up - at which time *Chloe* rolled her eyes insinuating that the precautions were unnecessary, a stance she continued to hold with her parents until her death. *Anna* did not share signs of suicidality to watch for, nor did she ever indicate that *Chloe* was currently suicidal and had attempted suicide previously (and recently). After speaking to *Jason* about her concerns that the medication *Chloe* was prescribed, according to *Anna*, "*could cause [reasonably implying new]* **suicidal ideations**," the parents agreed that they should contact *Chloe's* therapist and ask her about it. *Roxanne* called *Chloe's* therapist *Pepper Joy Bridgens ("Joy")* at Willamette Family, Inc. *Chloe's* therapist shared signs to watch for that could indicate the onset of suicidal ideations, as well as her observation that *Chloe* hadn't displayed any such signs of suicidal ideation during her sessions. She gave *Roxanne* the Suicide Hotline number just to be on the safe side and urged *Roxanne* and *Jason* (who was in the room when *Roxanne* was on the phone with *Joy*) to keep an eye out for any of the signs she had shared with them.

*Roxanne* picked up a magnet with the hotline number on it and put it in plain sight on the refrigerator and discussed in length the signs to watch for with *Jason*. Neither parent ever witnessed any such signs prior to *Chloe's* passing.

## Claim II

*Roxanne* helped *Chloe* fill out paperwork at her PCP *Monique J. Carroll's ("Monique")* office at the Charnelton Community Health Center of Lane County, which included a risk questionnaire in preparation for her appointment the following day. To complete the questionnaire, *Roxanne* asking *Chloe* all the questions listed, which materially substantiates *Roxanne's* claim that she was *not*, in fact, aware of *Chloe's* suicidality and was most definitely *not* aware of any previous suicide attempts. *Roxanne* took *Chloe* back to Monique the next day for her sports physical and well-child check. *Monique* asked *Roxanne* to leave the room while she talked to *Chloe* alone. This made Roxanne uncomfortable, but she complied. While they were in there alone, they filled out another questionnaire together which clearly indicated *Chloe's* current severe suicidality and previous suicide attempts. Neither Chloe nor Monique shared its contents with Roxanne when she was allowed to rejoin them in the exam room. Neither of them notified *Chloe's* father *Jason*, *Chloe's* therapist at Willamette Family Inc, *Chloe's* school...nobody. No action was taken at all to keep *Chloe* safe, nor communicate with *Chloe's* parents so they could keep *Chloe* safe, as was their fundamental right (to protect their child).. *Roxanne* went to *Monique's* office to pick up a copy of *Chloe's* Physical Examination Form, signed by Ed Schmidt MD for *Monique* on 12/12/17, because she could not find the one they received on December 1st and they needed it for *Chloe's* participation on the swim team. *Roxanne* reasonably assumes the "progress note" listed on the Authorization to Use and Disclose Health Information form was the same as *Chloe's* Physical Examination Form since that was what Roxanne requested and what she picked up on December 12, 2017.

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2Bor%2BCosts.pdf&Itemid=625

Still, *Chloe's* previously reported severe suicidality and previous suicide attempts were not reported to *Chloe's* parent(s), even though Roxanne was there in the office in person and available for communication. Roxanne later took *Chloe* to see *Michelle Davila FNP, DNP ("Michelle")*, a provider in the same network as *Chloe's* PCP Monique. *Chloe* again filled out the risk questionnaire at that appointment which indicated, again, current severe suicidality and suicide attempts. Again, neither *Chloe* nor *Michelle* shared its contents with *Chloe's* parents or therapist, and no action was taken.

### Claim III

Roxanne wrote what *Chloe* called a "strongly worded letter" to Shasta Middle School *Principal Brady Cottle ("Brady")* for publicly humiliating her with unfounded allegations and discriminatory targeting in the middle of the cafeteria during lunch, and then misrepresenting the situation to *Chloe's* parents until they were finally able to get the truth from *Brady* which was quite contradictory to his original misrepresentation of the circumstances surrounding his discriminatory targeting behavior toward Chloe due to her sexual orientation. *Chloe* later reported being bullied by her peers at Willamette High School to her therapist at Willamette Family, Inc. The story *Chloe* gave her parents was that her "once-friends" began bullying her in 8th grade at Shasta Middle School after she had decided to build a better life for herself and attempted to stop drinking and smoking marijuana.

### Claim IV

*Chloe's* parents pleaded with the *Eugene 4J ("4J")* and the *Bethel 52 School Districts ("B52")* to allow *Chloe* to attend Churchill where she had healthier, sober, friends who encouraged her health and wellness and were a huge source of peer support for her. The districts refused to allow her to attend Churchill, and informed us that ECCO was not an option either. *Chloe* agreed to try Willamette High School again, with the **promise** that the administration would take steps to ensure *Chloe's* safety and well-being. *Jason* and *Chloe* met with WHS *Principal Mindy LeRoux ("Mindy")* and gave her exact names of the girls who had been pressuring her to drink alcohol and do drugs with them, saying attacking things to her such as that she thinks she's too good for them now. *Mindy* promised to take steps to keep the girls separated and make sure the pressuring/attacking behaviors stopped. She also promised to make sure *Chloe* had access to both *Mindy* and/or *Chloe's* counselor *Meagan Haas ("Meagan")* should she experience any more traumatic bullying behaviors while at school or on her way to/from school. *Chloe* subsequently asked the office many times to talk to *Mindy* and was repeatedly turned away. On *Chloe's* last day in attendance at Willamette High School, she texted Roxanne and begged her to excuse her from class so she could talk to her counselor, *Meagan*. *Chloe* would not tell *Roxanne* what happened, only that she was "still" being "bullied" by the same girls listed on the paper Jason had given to the principal. *Chloe* had previously been candid about not being able to resist peer pressure to drink and smoke in their presence, however, this was the first time she shared with one of her parents that it was due to the bullying rather than loyalty.

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2Bor%2BCosts.pdf&Itemid=625

Worried and unaware of all of the circumstances because *Chloe* would only share them with her counselor, *Roxanne* went to the school and excused *Chloe* from class and took her to the counseling officer herself and plead with her counselor to meet with her and find out what was going on. Her counselor sent her away because she was busy with "scheduling appointments." She made an appointment the next morning for 7:30 AM, saying that gave them 30 minutes before school started. The next day was late-start Wednesday, and school didn't start that day until 9am, so *Jason* reasonably assumed she had made a mistake and that she meant 8:30am. *Roxanne* was not feeling well, but urged *Jason* to take *Chloe* there at the scheduled time just in case. *Jason* did just that. However he was almost 10 minutes late due to his confusion about the times. They stood at the door knocking for about 10 minutes, then finally came home as *Meagan* wasn't answering her phone, nor calling *Chloe* or either one of her parents to check in on *Chloe*. She did not check back until the next day via email.

### Claim V

*Roxanne* took *Chloe* to register at Willamette Leadership Academy ("WLA"), per her request. They also spoke to the principal (at the time) because *Chloe* was requesting to be put on a 504 plan. The principal offered to request records directly from Lane County Behavioral Health, and *Chloe* said no, that she wanted her Dad (*Jason*) to pick them up personally and bring them in (a clear indication that she wanted her dad *Jason* to know she was actively suicidal, but couldn't muster the courage to tell him herself. *Jason* went to *LCBH* to request *Chloe's* records and was informed that even though *Chloe* had **already** signed a release of information for her PCP *Monique* on December 1, 2017, and *Monique* was part of the same umbrella that is *CHCLC*, all of who share the same Electronic Health Record ("EHR") system and all the Personal Health Information ("PHI") contained therein. *LCBH* refused to release her file - which clearly indicated severe suicidal risk on the very first page - to her father *Jason*. They told *Jason* that *Chloe* had to come in and sign another release of information before they would release *Chloe's* file to *Jason*. The next time *Jason* could get off work, he picked *Chloe* up from school at WLA and took her to sign the release of information at *LCBH*. She could have requested a copy of her file for herself, but insisted that she wanted her Dad to get it. When the receptionist told them it could take up to 30 days, *Chloe* got visibly irate and cussed. Jason was concerned and asked her what that was about as they were leaving, and she replied that she was "tired of all this bureaucratic bullshit." The clerk who finally produced *Chloe's* file to her father *Jason* after her death told *Jason* and *Roxanne*, in the presence of witness Carla Smith Blivens ("Carla"), that *Chloe's* copied file (with severe suicidal risk listed on the first page) was delivered to the desk of the clerk responsible for getting them to clients who request them, and she "didn't want to bother" [the parents] on a Friday." **Petitioners' daughter Chloe Elizabeth Wilson was found deceased by suicide (ligation) on February 26, 2018**, by her parents *Roxanne* and *Jason*, the Monday morning after the Friday that the clerk "didn't want to bother" them.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

We have filed for administrative relief as to all claims in Section III and have concluded all administrative appeals that have been made available to us.  **X Yes** _ No

## V. RELIEF

We request that the US District Court State, District of Oregon, Portland Division (1) issue an immediate injunction to protect the privacy of the minor Chloe Elizabeth Wilson (2) rule that Defendants' actions resulted in Irreparable Injury to Petitioners (3) rule in favor of Petitioners and set the precedent of "Safety over Privacy" to protect our children from the rising suicide rates, which have TRIBPLED in the last decade for children aged 10-14 (4) provide the following monetary and action relief, and to (5) assess any punitive damages deemed to be fitting for this case:

### Immediate Injunction

We request that the US District Court State, District of Oregon, Portland Division, issue an immediate injunction to protect the privacy of the minor Chloe Elizabeth Wilson, stating that only Protected Health Information and other private information that specifically pertains to the federal question presented in this Complaint will be permissible in court, and providing for consequences for violations of this injunction according to the discretion of the Honorable Judge.

### Damages Claimed

| | |
|---|---|
| **$10,171,559** | **Total Economic Damages Claimed** |
| $10,147,701 | Loss of Wages (see chart below) |
| $       5,658 | Costs, Expenses & Fees (Cremation, Litigation, Moving, Travel) |
| $     18,200 | Psychotherapy for Grief/Trauma ($75/session X 52 wks X 4 ppl) |

| | |
|---|---|
| **$13,828,441** | **Non-Economic Damages Claimed:** |
| | Wrongful Death of Petitioners' Minor Child, |
| | Pain, Mental Suffering, Emotional Distress, |
| | Interference with normal and usual activities, |
| | Loss of Care, Comfort, Companionship & Society, |
| | Injury to Reputation & Humiliation, |
| | Extraordinary Financial Loss & Burden. |

**TOTAL MONETARY RELIEF FROM ALL DEFENDANTS: $24,000,000**

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2But%2BCosts.pdf&Itemid=625

## Breakdown of Requested Relief Between Defendants

*From Defendant No. 1,* **COUNTY OF LANE**:
**Monetary Relief:**     **$10,000,000** (20% to Petitioners; the rest as follows:)
**Action Relief:**
1. Deposit 20% of Monetary Relief awarded into an Escrow Account and Governed by a Board Chaired by Rep. Julie Fahey and Com. Co-Chaired by Pat Farr (or another chair and co-chair appointed by Representative Sarah Gelser) to partially finance ONLY the long-term sustainable plan, implemented immediately and lasting indefinitely, to provide for the following stipulations:
    a. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Trauma-Informed Care Training provided by Oregon Family Support Network.
    b. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Youth Mental Health First Aid.
    c. Require ALL EMPLOYEES AND VOLUNTEERS serving children eight (8) years of age and older to be certified in ASIST (Applied Suicide Intervention Skills Training), and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.
    d. Require ALL EMPLOYEES AND VOLUNTEERS serving children ten (10) years of age and older to be certified in training about Best Post-Vention Practices to Minimize Harm & Contagion after a suicide in Lane County.
    e. OFFER QPR (Question, Persuade, Refer) Training, and this training through active outreach, FREE OF CHARGE, to any student(s) and/or parent(s) in all of Lane County who wish to take it.
    f. Create and Implement a system for accountability for all school districts in Lane County to adhere to these stipulations, as well as all state & federal laws, regulations, and guidelines related to youth mental health, suicide preventnion, and violence prevention, which include steep penalties up to and including the termination of individuals failing to comply, no matter the position in the school system, in society, or any other factor that is not relevant to the health and safety of the children and adolescents of Lane County
2. Absorb whatever costs remain after this 20% has been exhausted to be added to the annual budget for Lane County.
3. Donate 20% of Monetary Relief Awarded to Lane County Education District to be SOLELY USED to implement the Empathy Program Created by Junction City Police Chief Bob Morris and his co-creator and partner into EVERY elementary school in Lane County, and to compensate Chief Morris and his partner appropriately, with at least two implementations being competed every three (3) months, and ALL implementations being completed within twelve (12) months.
4. (i) Donate 20% of Monetary Relief Awarded to Fifth Corner Academy nonprofit organization, EIN 82-3554929, for their peer-delivered suicide prevention and intervention programs, and

(ii) Physically hand the check to Fifth Corner Academy in a public ceremony in which Commissioner Pat Farr (and wife if available) expresses their (appreciated) deep regret and empathy for the loss of Petitioners' child Chloe and the ways the gaps in Lane County's systems of care "may have contributed" to rise in youth suicides like hers, as well as the exact remedies the county intends to implement (and when) address the gaps, "now that they have been made aware of them," including the stipulations included in the Action Relief sections listed here.
(iii) Identify the gaps and remedies to be shared at the ceremony in a collective effort between the Lane County Board of Commissioners, the Petitioners, and the Board of Directors of Fifth Corner Academy via recorded Zoom video conferences.
(iv) Include all Defendants listed herein in the public ceremony and allow each one listed to provide their own public apology and what they intend to do to address the gaps as identified via the method listed above.
  a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their county supports them with their hearts and their money can save the lives of many young people in Lane County.

*From Defendant No. 2,* **COMMUNITY HEALTH CENTERS OF LANE COUNTY (CHCLC):**
**Monetary Relief:** $2,000,000 (50% to Petitioners; the rest as follows:)
**Action Relief:**
1. Deposit 50% of Monetary Relief awarded into an Escrow Account and Governed by a Board Chaired by Jessica McKnight (or a parent of a child in Bethel School District of Jessica McKnight's choosing) to finance ONLY the long-term sustainable plan, implemented immediately and lasting indefinitely, to provide for the following stipulations:
    a. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Trauma-Informed Care Training provided by Oregon Family Support Network.
    b. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Youth Mental Health First Aid.
    c. Require ALL EMPLOYEES AND VOLUNTEERS serving children eight (8) years of age and older to be certified in ASIST (Applied Suicide Intervention Skills Training), and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.
    d. Require ALL EMPLOYEES AND VOLUNTEERS serving children ten (10) years of age and older to be certified in training about Best Post-Vention Practices to Minimize Harm & Contagion after a suicide in Lane County.
    e. Require ALL STUDENTS to take QPR (Question, Persuade, Refer) Training, and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2Bor%2BCosts.pdf&Itemid=625

Page 9

    f. Pay a Psychologist, LPC, LMFT, LCSW, or the CAHOOTS team at the White Bird Clinic at least one of the aforementioned professional to be available at every school in the district every single day school is in session.
2. Approve inter-school and/or inter-district transfers for students requesting them due to "mental health," "trauma," "bullying," and/or "suicidal" experiences/issues, allowing children experiencing these things to attend whichever school they and their parent(s) and/or support team deem to be the most positive school for their health and safety.
3. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the LCBH and CHCLC intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.
    a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their county health system supports them with their hearts and their money can save the lives of many young people in Lane County.

*From Defendant No. 3,* **BETHEL 52 SCHOOL DISTRICT (B52)**:
**Monetary Relief**:     **$2,000,000** (50% to Petitioners; the rest as follows:)
**Action Relief:**
Deposit 50% of Monetary Relief awarded into an Escrow Account and Governed by a Board Chaired by Roberta Howard (or a parent of a child in Eugene 4J District appointed by Roberta Howard) to finance ONLY the long-term sustainable plan, implemented immediately and lasting indefinitely, to provide for the following stipulations:
    a. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Trauma-Informed Care Training provided by Oregon Family Support Network.
    b. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Youth Mental Health First Aid.
    c. Require ALL EMPLOYEES AND VOLUNTEERS serving children eight (8) years of age and older to be certified in ASIST (Applied Suicide Intervention Skills Training), and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.
    d. Require ALL EMPLOYEES AND VOLUNTEERS serving children ten (10) years of age and older to be certified in training about Best Post-Vention Practices to Minimize Harm & Contagion after a suicide in Lane County.
    e. Require ALL STUDENTS to take QPR (Question, Persuade, Refer) Training, and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.
    f. Pay a Psychologist, LPC, LMFT, LCSW, or the CAHOOTS team at the White Bird Clinic at least one of the aforementioned professional to be available at every school in the district every single day school is in session.

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2Bor%2BCosts.pdf&Itemid=635

2. Approve inter-school and/or inter-district transfers for students requesting them due to "mental health," "trauma," "bullying," and/or "suicidal" experiences/issues, allowing children experiencing these things to attend whichever school they and their parent(s) and/or support team deem to be the most positive school for their health and safety.
3. Replace the security officer at Willamette High School with one who doesn't say such things to students and parents as "Bullying builds character," and "No one's ever died from bullying," like they did after Chloe died by suicide (the night she was tortured with relentless bullying by her peers). Require the new security officer to take all of the trainings listed above in section (1).
4. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the Bethel 52 School District intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.
    a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their school systems support them with their hearts and their money can save the lives of many young people in Lane County.

*From Defendant No. 4,* **EUGENE 4J SCHOOL DISTRICT (4J):**
**Monetary Relief:**   $2,000,000 (50% to Petitioners; the rest as follows:)
**Action Relief:**
Deposit 50% of Monetary Relief awarded into an Escrow Account and Governed by a Board Chaired by Jessica McKnight (or a parent of a child in Bethel School District appointed by Jessica McKnight) to finance ONLY the long-term sustainable plan, implemented immediately and lasting indefinitely, to provide for the following stipulations:

  b. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Trauma-Informed Care Training provided by Oregon Family Support Network.
  c. Require ALL EMPLOYEES AND VOLUNTEERS to be certified in Youth Mental Health First Aid.
  d. Require ALL EMPLOYEES AND VOLUNTEERS serving children eight (8) years of age and older to be certified in ASIST (Applied Suicide Intervention Skills Training), and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.
  e. Require ALL EMPLOYEES AND VOLUNTEERS serving children ten (10) years of age and older to be certified in training about Best Post-Vention Practices to Minimize Harm & Contagion after a suicide in Lane County.
  f. Require ALL STUDENTS to take QPR (Question, Persuade, Refer) Training, and OFFER this training through active outreach, FREE OF CHARGE, to any parent(s) who wish to take it.

g. Pay a Psychologist, LPC, LMFT, LCSW, or the CAHOOTS team at the White Bird Clinic at least one of the aforementioned professional to be available at every school in the district every single day school is in session.

1. Approve inter-school and/or inter-district transfers for students requesting them due to "mental health," "trauma," "bullying," and/or "suicidal" experiences/issues, allowing children experiencing these things to attend whichever school they and their parent(s) and/or support team deem to be the most positive school for their health and safety.
2. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the Eugene 4J School District intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.
    a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their school systems support them with their hearts and their money can save the lives of many young people in Lane County.

### *From Defendant No. 5,* **ANNA MARGARET WILLLIAMS (CHCLC-LCBH):**
**Monetary Relief:**     $2,000,000 (50% to Petitioners; the rest as follows:)
**Action Relief:**

1. (i) Donate 50% of Monetary Relief Awarded to Fifth Corner Academy nonprofit organization, EIN 82-3554929, for their peer-delivered suicide prevention and intervention programs, and (ii) Physically hand the check to Fifth Corner Academy in a public ceremony in which Commissioner Pat Farr (and wife if available) expresses their (appreciated) deep regret and empathy for the loss of Petitioners' child Chloe and the ways the gaps in Lane County's systems of care "may have contributed" to rise in youth suicides like hers, as well as the exact remedies the county intends to implement (and when) address the gaps, "now that they have been made aware of them," including the stipulations included in the Action Relief sections listed here.
2. Sign a "Safety over Privacy" contract with Lane County, Lane County Behavioral Health, and the Community Health Centers of Lane County which requires her to ALWAYS notify everyone in the support team of a minor under the age of eighteen (18) of any previous suicide attempts, current suicidality, or risks of suicide (as defined by SAMHSA and the CDC). This applies to direct clients and clients of supervisees.
    a. Resign immediately if that contract is ever broken at any time.
3. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the Eugene 4J School District intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.

https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2Bof%2BFees%2Bor%2BCosts.pdf&Itemid=625

Page 12

4. Apologize directly to Petitioners, Chloe's parents, for not telling them, nor anyone else in Chloe's support team, about Chloe's self-disclosed previous suicide attempts and current suicidality.

*From Defendant No. 6,* **ELLEN HOPE THORNTON LOVE (CHCLC-LCBH):**
**Monetary Relief:**     **$2,000,000** (50% to Petitioners; the rest as follows:)
**Action Relief:**
1. (i) Donate 50% of Monetary Relief Awarded to Fifth Corner Academy nonprofit organization, EIN 82-3554929, for their peer-delivered suicide prevention and intervention programs, and (ii) Physically hand the check to Fifth Corner Academy in a public ceremony in which Commissioner Pat Farr (and wife if available) expresses their (appreciated) deep regret and empathy for the loss of Petitioners' child Chloe and the ways the gaps in Lane County's systems of care "may have contributed" to rise in youth suicides like hers, as well as the exact remedies the county intends to implement (and when) address the gaps, "now that they have been made aware of them," including the stipulations included in the Action Relief sections listed here.
2. Sign a "Safety over Privacy" contract with Lane County, Lane County Behavioral Health, and the Community Health Centers of Lane County which requires her to ALWAYS notify everyone in the support team of a minor under the age of eighteen (18) of any previous suicide attempts, current suicidality, or risks of suicide (as defined by SAMHSA and the CDC). This applies to direct clients and clients of supervisees.
    a. Resign immediately if that contract is ever broken at any time.
3. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the Eugene 4J School District intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.
4. Apologize directly to Petitioners, Chloe's parents, for not requiring the Anna Williams, the adolescent psychiatrist she was supervising, to tell the parents, nor anyone else in Chloe's support team, about Chloe's self-disclosed previous suicide attempts and current suicidality.
    a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their child and adolescent program psychiatrists support them with their hearts and their money can save the lives of many young people in Lane County.

*From Defendant No. 7,* **MONIQUE JEAN CARROLL (CHCLC):**
**Monetary Relief:$2,000,000** (50% to Petitioners; the rest as follows:)
**Action Relief:**

1. (i) Donate 50% of Monetary Relief Awarded to Fifth Corner Academy nonprofit organization, EIN 82-3554929, for their peer-delivered suicide prevention and intervention programs, and (ii) Physically hand the check to Fifth Corner Academy in a public ceremony in which Commissioner Pat Farr (and wife if available) expresses their (appreciated) deep regret and empathy for the loss of Petitioners' child Chloe and the ways the gaps in Lane County's systems of care "may have contributed" to rise in youth suicides like hers, as well as the exact remedies the county intends to implement (and when) address the gaps, "now that they have been made aware of them," including the stipulations included in the Action Relief sections listed here.
2. Sign a "Safety over Privacy" contract with Lane County, Lane County Behavioral Health, and the Community Health Centers of Lane County which requires her to ALWAYS notify everyone in the support team of a minor under the age of eighteen (18) of any previous suicide attempts, current suicidality, or risks of suicide (as defined by SAMHSA and the CDC). This applies to direct clients and clients of supervisees.
    a. Resign immediately if that contract is ever broken at any time.
3. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the Eugene 4J School District intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.
4. Apologize directly to Petitioners, Chloe's parents, for not telling them, nor anyone else in Chloe's support team, about Chloe's self-disclosed previous suicide attempts and current suicidality, according to the questionnaire Chloe filled out on several occasions.
    a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their child and adolescent program psychiatrists support them with their hearts and their money can save the lives of many young people in Lane County.

### *From Defendant No. 8, MICHELLE DAVILA (CHCLC):*
**Monetary Relief:**   $2,000,000 (50% to Petitioners; the rest as follows:)
**Action Relief:**

1. (i) Donate 50% of Monetary Relief Awarded to Fifth Corner Academy nonprofit organization, EIN 82-3554929, for their peer-delivered suicide prevention and intervention programs, and (ii) Physically hand the check to Fifth Corner Academy in a public ceremony in which Commissioner Pat Farr (and wife if available) expresses their (appreciated) deep regret and empathy for the loss of Petitioners' child Chloe and the ways the gaps in Lane County's systems of care "may have contributed" to rise in youth suicides like hers, as well as the exact remedies the county intends to implement (and when) address the gaps, "now that they have been made aware of them," including the stipulations included in the Action Relief sections listed here.

2. Sign a "Safety over Privacy" contract with Lane County, Lane County Behavioral Health, and the Community Health Centers of Lane County which requires her to ALWAYS notify everyone in the support team of a minor under the age of eighteen (18) of any previous suicide attempts, current suicidality, or risks of suicide (as defined by SAMHSA and the CDC). This applies to direct clients and clients of supervisees.
    a. Resign immediately if that contract is ever broken at any time.
3. Apologize directly to Petitioners, Chloe's parents, for not telling them, nor anyone else in Chloe's support team, about Chloe's self-disclosed previous suicide attempts and current suicidality, according to the questionnaire Chloe filled out.
4. Participate in the ceremony organized and put on by Lane County, including providing a public apology at the ceremony outlining the gaps Chloe and many others have fallen through, and what the Eugene 4J School District intends to do to fix the problem, including the stipulations included in the Action Relief sections listed here.
    a. It is not necessary to share that these monetary and action relief stipulations were the result of a lawsuit, except how much money is being allocated to each effort, with the minimum efforts as listed above. **Hope** is the main thing that saves lives, and feeling like their child and adolescent program psychiatrists support them with their hearts and their money can save the lives of many young people in Lane County.

**I declare under penalty of perjury that the foregoing is true and correct. Signed this 27th day of February, 2020.**

| | |
|---|---|
| **February 26, 2020**<br>DATE | _[signature]_<br>SIGNATURE OF PLAINTIFF: Jason E Wilson |
| **February 26, 2020**<br>DATE | _[signature]_<br>SIGNATURE OF PLAINTIFF: Roxanne F Wilson |

Adapted from:
https://ord.uscourts.gov/index.php/component/rsfiles/download-file/files?path=civil_forms%252Fcase_initiation%252FApplication%2Bto%2BProceed%2BWithout%2BPrepayment%2BoF%2BFees%2BBut%2BCosts.pdf&Itemid=625